UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

DURON WEAVER, *et al.*                                                            Plaintiffs

v.                                                                        Civil Action No. 3:24-cv-103-RGJ

LOUISVILLE-JEFFERSON COUNTY                                                        Defendants
METRO GOVERNMENT, *et al.*

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Louisville-Jefferson County Metro Government ("Metro") and Louisville Metro Police Department ("LMPD") Chief Jacquelyn Gwinn-Villaroel ("Gwinn-Villaroel") (collectively, "Defendants") move to dismiss certain claims under Fed. R. Civ. P. 12(b)(6). [DE 5]. Duron Weaver ("Duron"), Dushon Weaver ("Dushon"), Micah Gazaway ("Gazaway"), and De'Arreon Williams ("Williams") (collectively, "Plaintiffs") responded, and Defendants replied. [DE 6; DE 8]. This motion is ripe. For the reasons explained below, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.

**I.   Background**

This case was originally filed in Jefferson Circuit Court on February 2, 2024 and timely removed to this Court on February 20, 2024. [DE 1; DE 1-1]. The complaint brings eleven total claims. First, the complaint brings five federal claims under 42 U.S.C. § 1983: (Count 1) unlawful search against four unidentified LMPD officers (collectively, the "Unidentified Officers"); (Count 2) unreasonable use of force against the Unidentified Officers; (Count 3) selective enforcement against the Unidentified Officers; (Count 4) unconstitutional policy or custom against Metro; and (Count 5) failure to train against Metro. [DE 1-1 at 28–40]. The complaint also brings six state law claims: (Count 6) false imprisonment against the Unidentified Officers; (Count 7) assault

against the Unidentified Officers; (Count 8) excessive force against the Unidentified Officers; (Count 9) intentional infliction of emotional distress against the Unidentified Officers; (Count 10) negligent supervision, training, and/or retention against Gwinn-Villaroel; and (Count 11) ordinary and/or gross negligence against the Unidentified Officers and Gwinn-Villaroel. [*Id.* at 40–45].

The complaint alleges that all four Plaintiffs were "young African-American males" between the ages of 19 and 21 with no criminal records at the time of this incident. [DE 1-1 at 12]. Plaintiffs had been friends since elementary school and were living with their parents. [*Id.*]. Having decided to move in together, Plaintiffs planned to tour potential rentals on Friday, February 10, 2023. [*Id.* at 13]. Before the first tour, Plaintiffs carpooled together in Duron's Kia Forte to pick up breakfast at the Burger King located at 3701 Diann Marie Road, Louisville, Kentucky 40241. [*Id.*]. Plaintiffs ordered their meals at the drive-thru window and parked in the parking lot to eat. [*Id.* at 13–14].

According to the complaint, less than a minute after parking, four unmarked police vehicles approached "at a high rate of speed," blocking Plaintiffs' car. [*Id.* at 14]. Plaintiffs allege all four Unidentified Officers exited their vehicles wearing plain clothes and bullet proof vests bearing the word "POLICE." [*Id.* at 14–15]. The Unidentified Officers approached the vehicle with guns pointed at Plaintiffs, instructing them to "freeze" and for Duron to shut off the vehicle and throw the keys out of the window. [*Id.* at 15]. Duron shut off the engine, removed the keys, and placed them on the dashboard. [*Id.*]. Williams, who was sitting in the passenger seat, threw the keys out of the window. [*Id.*]. The complaint alleges each Plaintiff was forced to exit the car at gunpoint, searched, and interrogated. [*Id.* at 15–18]. The Unidentified Officers also searched Duron's car, allegedly expecting to find a firearm, but located none. [*Id.* at 18]. Plaintiffs repeatedly asked the Unidentified Officers why they were being detained and why the officers' guns were drawn, but

they refused to answer their questions. [*Id.* at 15–18]. Plaintiffs were not arrested, and the Unidentified Officers discovered no evidence of unlawful activity during the incident. [*Id.* at 20].

## II. Discussion

Federal Rule of Civil Procedure 12(b)(6) instructs that a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "But the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

3

### A.  § 1983 *Monell* Claims

"If a police officer violates the Constitution, '42 U.S.C. § 1983 provides a civil remedy for those' injured by the violation." *Jackson v. City of Cleveland*, 925 F.3d 793, 813 (6th Cir. 2019) (quoting *Peffer v. Stephens*, 880 F.3d 256, 263 (6th Cir. 2018)). "[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (citation and internal quotation marks omitted). When the "execution of a government's policy or custom . . . inflicts the [constitutional] injury," the local government can be held liable under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). *Monell* claims allow for municipal liability "for the constitutional violations of their employees only where the municipality's policy or custom led to the violation." *Chambers v. Sanders*, 63 F.4th 1092, 1101–02 (6th Cir. 2023) (citation and internal quotations omitted).

#### i.  Count 4 – § 1983 Policy and Custom

To state a § 1983 claim based on a municipal policy or custom, Plaintiffs must "identify the policy, connect the policy to [Metro] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citation omitted). A plaintiff generally has four ways to demonstrate an unlawful policy or custom: "[t]he plaintiff can look to (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). "Even after showing an unlawful policy or custom, a plaintiff must also demonstrate a direct causal link between the policy and the alleged

constitutional violation in order to show that the municipality's deliberate conduct can be deemed the moving force behind the violation." *Jones v. Louisville/Jefferson Cnty. Metro Gov't*, 482 F. Supp. 3d 584, 597 (W.D. Ky. 2020) (quoting *Spears*, 589 F.3d 249 at 256) (cleaned up). "[P]roof merely that such a policy or custom was 'likely' to cause a particular violation is not sufficient; there must be proven at least an 'affirmative link' between policy or custom and violation; in tort principle terms, the causal connection must be 'proximate,' not merely 'but-for' causation-in-fact." *Mann v. Helmig*, 289 F. App'x 845, 850 (6th Cir. 2008) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987)). At the motion to dismiss stage, it is sufficient for a plaintiff to plausibly allege an unlawful policy or custom and a direct causal link to the harm. *Daugherty v. Louisville-Jefferson Cnty. Metro Gov't*, 495 F. Supp. 3d 513, 524 (W.D. Ky. 2020) (finding plaintiffs sufficiently stated a § 1983 claim based on a municipal policy or custom where "Plaintiffs allege[d] a specific policy of targeting African American males for traffic stops").

Defendants argue that the sources cited by Plaintiffs—news articles, the Hillard Heintze Report, the Department of Justice ("DOJ") Report, etc.—all predate the time of the alleged events in the complaint, and so "[n]one of these references establish that a pattern or practice existed at the time of the investigatory stop that is the subject of this lawsuit." [DE 5 at 58–59]. In support of this argument, Defendants cite *Yatsko v. Graziolli* which held that a DOJ report was "not probative to whether the city had notice of a clear and persistent pattern" because it was published four years prior to the events in question. 458 F. Supp. 3d 702, 717 (N.D. Ohio 2020). But *Yatsko* was before the court on summary judgment, not a motion to dismiss. In this case, the complaint makes several allegations relating to a policy or custom: that Metro has "knowingly allowed its officers to ignore its own policies against biased law enforcement practices"; has "encouraged . . . impermissible investigatory search tactics, absent any reasonable suspicion or probable cause";

5

knew "of the unconstitutional behavior and the need to take corrective action" but "ratified, condoned, and consented to the law enforcement officers' unlawful conduct"; and that Gwinn-Villaroel had "final policymaking authority" but allowed "impermissible decisions and/or actions" to persist.  [DE 1-1 at 11, 21, 35–37].

These assertions plausibly allege "that Louisville Metro has an illegal policy or custom of disproportionately stopping and searching African-Americans." *Daugherty*, 495 F. Supp. 3d at 524; *see also Feliciano v. Cnty. of Suffolk*, 419 F. Supp. 2d 302, 312 (E.D.N.Y. 2005).  The complaint connects this policy or custom to the Unidentified Officers' conduct, asserting that Plaintiffs were targeted "since they were young African-American males" and that the Unidentified Officers "acted in accordance with the custom and practice of LMPD violating the rights of African-Americans . . . especially young African-American males."  [DE 1-1 at 19 (emphasis omitted)]; *see Daugherty*, 495 F. Supp. 3d at 524 (holding plaintiff survived motion to dismiss because he "plausibly connected this policy or custom to Unknown Officers' conduct in his case because he alleges they only stopped him because he was an African-American").  It is true that the news articles and reports cited by Plaintiffs predate the incident at the heart of the complaint, but Plaintiffs are only required to *plausibly allege* the existence of a policy or custom at this early stage in the litigation.  While these sources may not affirmatively show that the same policies or customs they describe still existed at the time of the events in question, when coupled with the other allegations in the complaint, Plaintiffs do enough to plausibly allege that similar policies or customs have continued within LMPD.  Defendants' motion to dismiss Count 4 is **DENIED**.

*ii. Count 5 – § 1983 Failure to Train*

To state a § 1983 claim based on a municipality's failure-to-train or failure-to-supervise, the plaintiff must allege: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). As to the municipality's "deliberate indifference," the plaintiff must either allege: (1) "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury"; or (2) "[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]" *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005); *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997).

Defendants argue that the complaint contains "no factual allegations supportive of a failure to train claim" and that "[t]here is a complete lack of factual support for the allegation that Metro Government acted with deliberate indifference with respect to training[.]" [DE 5 at 61]. In their response, Plaintiffs only offer the conclusory assertion that LMPD "had a hidden training policy that caused deliberate indifference to the constitutional rights of African-American drivers" and that "if it was not for the Defendants' covert and improper training policy the Plaintiffs and many other African-American drivers' [sic] would not have been injured." [DE 6-1 at 94]. But the complaint says more, asserting that the Unidentified Officers "were not adequately trained and/or supervised in the areas of impermissible investigatory search tactics and unreasonable use of force." [DE 1-1 at 38–39]. The sources cited in Plaintiffs' complaint regarding LMPD's

7

shortcomings in these areas in recent years provide factual support for the allegation that Metro was "on notice of this need to train and/or supervise[.]" [*Id.* at 40].  The incidents referred to in the news articles and reports create a reasonable inference that "the City had notice that the training was deficient" or that the "City had failed to train its employees to handle recurring situations presenting an obvious potential for a violation." *Campbell v. City of Springboro*, 700 F.3d 779, 794 (6th Cir. 2012) (citing *Fisher*, 398 F.3d at 849 and *Brown*, 520 U.S. at 409) (McKeague, J., concurring).  They also support the complaint's general allegation that the "need for more and/or different training has been so obvious" that Metro's lack of inadequate training amounts to "deliberate indifference." [DE 1-1 at 40].

Standing alone, the complaint's legalistic assertions outlining the elements of the claim would not be enough to survive the motion to dismiss. *See Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010) ("Stripped of legal language, Plaintiffs' Complaint contains no facts that could plausibly lead one to believe that the City deliberately ignored a history of abuse by officers[.]").  But coupled with the detailed factual allegations about the incident at Burger King ("a single violation of federal rights," *Jackson*, 925 F.3d at 835) and the news articles and reports cited in the complaint ("prior instances of unconstitutional conduct" or "recurring situations presenting an obvious potential for such a violation," *Fisher*, 398 F.3d 837, 849), the complaint

plausibly alleges that Defendants acted with deliberate indifference.[1]  At minimum, the Unidentified Officers' alleged conduct is plausibly a "single violation of federal rights," and the recent history of LMPD outlined in the DOJ Report and other sources cited in the complaint could create a reasonable inference that Metro "has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]" *Brown*, 520 U.S. at 398.  Many of those incidents involve conduct aligning with Plaintiffs' complaint—"impermissible investigatory search tactics and unreasonable use of force." [DE 1-1 at 38–39].  As a result, the motion to dismiss Count 5 is **DENIED**.

---

[1] This Court has previously reached the same conclusion under similar circumstances.  In *Daugherty*, the Court found that articles cited in the complaint from the Courier-Journal as well as other lawsuits filed against Metro stated a plausible claim of deliberate indifference for the purpose of a failure-to-train claim. 495 F. Supp. at 525.  It determined that even though these articles and cases were published and filed "*after* Plaintiff was stopped" by officers, it was still plausible that Metro was "nonetheless on notice . . . *before* they percolated into public awareness."  *Id.* (emphasis in original).  In this case involving the same plaintiff's counsel and similar allegations in the complaint, it is an even more reasonable inference that Metro was on notice because the shortcomings described by the sources cited in the complaint have been widely publicized.  The articles, reports, and cases cited in the complaint here distinguish this case from others that have dismissed failure-to-train claims where the complaint contained similar conclusory assertions.  *C.f. Birgs*, 686 F. Supp. 2d at 780 (dismissing failure-to-train claim where "allegations are nothing more than 'formulaic recitation of the elements of a cause of action'") (quoting *Twombly*, 550 U.S. at 555); *Ransom v. Louisville-Jefferson Cnty. Metro. Gov't*, No. 3:19-CV-631-RGJ, 2020 WL 5944283, at *6 (W.D. Ky. Oct. 7, 2020) (dismissing failure-to-train claim where "[i]n essence, Plaintiff asks the Court to infer that Louisville Metro was 'deliberately indifferent' in training Defendant Officers because [of the officers' conduct]"); *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 501 (W.D. Ky. 2021) (quoting *Phillips v. PTS of Am., LLC*, No. 3:17-cv-603, 2017 WL 4582801, at *2 (W.D. Ky. Oct. 13, 2017)) (dismissing failure-to-train claim where complaint "'contain[ed] no factual content' indicating 'what these polices or customs regarding training and supervision were, why they were inadequate, and how they contributed to the [alleged] violation of [the plaintiff's] constitutional rights'" when it was "stripped of the legal conclusions").  In contrast, Plaintiffs in this case do not rely solely on their conclusory assertions in the body of the complaint, but create a reasonable inference that Metro acted with deliberate indifference by incorporating multiple sources discussing LMPD's past conduct.  *See Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791–92 (M.D. Tenn. 2018) ("Documents attached to the motion to dismiss briefing may be considered part of the pleadings if they were incorporated into the complaint by reference and are central to the plaintiff's claim.") (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

### *iii. Official Capacity Claims Against Gwinn-Villaroel*

Defendants argue that claims against Gwinn-Villaroel in her official capacity are equivalent to claims against Metro. [DE 5 at 62]; *see Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Scott v. Louisville/Jefferson Cnty. Metro Gov't*, 503 F.Supp.3d 532, 541 (W.D. Ky 2020) (naming individuals in their official capacity is redundant for the purpose of a § 1983 claim). It is well-established that "[s]uits against municipal employees in their official capacities 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Scott*, 503 F. Supp. 3d at 541 (quoting *Graham*, 473 U.S. at 165); *see also Schwindel v. Meade Cnty.*, 113 S.W.3d 159, 169 (Ky. 2003) (citing *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001)) (holding state officials sued in official capacity were "cloaked with the same immunity as the government agency he/she represents"). As a result, to the extent that the complaint names Gwinn-Villaroel in her official capacity, the Court will dismiss those claims.

### B. Qualified Immunity on State Law Claims

Defendants argue both of Plaintiffs' state-law negligence claims against them should be dismissed based on the doctrine of qualified immunity. [DE 5 at 64–66].

> [I]t is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although a[] [government official's] entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12.

*Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (internal quotation and citations omitted). There is no heightened factual showing that a plaintiff must make to survive a motion to dismiss on qualified immunity grounds that differs from the plausibility standard established under *Iqbal*. *Id.* at 427–28. Although qualified immunity does protect the defendant from all burdens of litigation, including "the burdens of discovery," *Iqbal*, 556 U.S. at 672 (citations omitted), the fact-intensive nature of a qualified immunity defense makes it "difficult for a

defendant to claim qualified immunity on the pleadings *before discovery*[.]" *Wesley*, 779 F.3d at 434 (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)) (emphasis in original).

Under Kentucky law, *Yanero* "provides the framework for deciding whether a public officer or employee is afforded immunity from tort liability." *Ritchie v. Turner*, 559 S.W.3d 822, 831 (Ky. 2018). Qualified immunity applies to the negligent performance of "(1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Yanero*, 65 S.W.3d at 522 (citations omitted). However, it does not apply to "the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (citation omitted). Acts involving supervision and training are consistently held to be discretionary functions. *See*, *e.g*, *Nichols v. Bourbon Cnty. Sheriff's Dep't*, 26 F. Supp. 3d 634, 642 (E.D. Ky. 2014); *Doe v. Magoffin Cnty. Fiscal Ct.*, 174 F. App'x 962, 973 (6th Cir. 2006); *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 480 (Ky. 2006).

Whether qualified immunity shields individuals from suit under Kentucky law depends on whether their acts of supervision and training were performed in good or bad faith. *See Nichols*, 26 F. Supp. 3d at 642. "[G]ood faith is just a presumption that exists absent evidence of 'bad faith.'" *Sloas*, 201 S.W.3d at 475. Bad faith "can be predicated on a violation of a constitutional, statutory, or other clearly established right which a person in the public employee's position presumptively would have known was afforded to a person in the plaintiff's position, *i.e.*, objective

11

unreasonableness; or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Yanero*, 65 S.W.3d at 523.

### i. Count 10 – Negligent Supervision, Training, and/or Retention

In their complaint, Plaintiffs allege that Gwinn-Villaroel "acted with deliberate indifference to the Plaintiffs['] constitutional rights to be free of unlawful searches, unlawful seizure of their persons and being subjected to excessive force . . . by failure to properly train, instruct, and supervise" the Unidentified Officers. [DE 1-1 at 21]. It states that she "had a duty to exercise reasonable care in the hiring, retention, and supervision of individuals" and "breached [her] duty in the negligent and reckless supervision and training of" the Unidentified Officers. [*Id.* at 44]. At this early stage in the litigation, taken as true, these are sufficient facts to allege bad faith. *Sloas*, 201 S.W.3d at 485–86 (quoting *Yanero*, 65 S.W.3d at 523) ("If an officer 'knew or reasonably should have known that the action he took would violate a [clearly established] right of the plaintiff,' bad faith may be found to exist."); *see Anderson v. Knox Cnty.*, No. CV 6:17-133-KKC, 2018 WL 7500205, at *15 (E.D. Ky. Oct. 3, 2018) (denying motion to dismiss based on qualified immunity where plaintiff alleged that law enforcement defendants "failed to properly train and supervise their subordinates, despite their duty to do so . . . failed to provide adequate policies to prevent the fabrication of evidence and the suppression of exculpatory evidence" and that these failures "were grossly negligent, and resulted in the deprivation of Anderson's constitutional rights"). Accordingly, Defendants' motion to dismiss the negligent supervision, training, and/or retention claim (Count 10) is **DENIED**.

### ii. Count 11 – Ordinary and/or Gross Negligence

Defendants advance the same arguments to dismiss Count 11 as they do for Count 10. [DE 5 at 65 ("Plaintiffs' general negligence claim against Chief Gwinn-Villaroel is no different than

12

their negligent training and supervision claims.")]. Plaintiffs make similar allegations on this claim as well. [DE 1-1 at 44–45 ("Gwinn-Villaroel . . . owed a duty of care to hire, train, and supervise [her] subordinates . . . and to take steps to prevent events such as what has occurred[.]")]. As a result, Defendants' motion to dismiss the ordinary/gross negligence claim (Count 11) is also **DENIED**.

### III.  Conclusion

For the reasons explained, and the Court being otherwise sufficiently advised, Defendants' motion to dismiss [DE 5] is **GRANTED** in part and **DENIED** in part. Accordingly, it is **ORDERED** that:

1. Claims against Defendant Gwinn-Villaroel in her official capacity are **DISMISSED**.
2. All other claims remain pending.

cc: counsel of record